DREW, J.
11 Albert Spivey appeals from a judgment finalizing the separation of community property incidental to his divorce from Sarah Spivey. We amend the judgment and, as amended, affirm.
FACTS
Sarah and Albert Spivey married in Monroe in May 1989; thereafter, they lived in Bossier Parish and had two children. They had a community property regime during the marriage. The Spiveys separated on August 3, 2007, and Sarah filed a petition for a La. C.C. art. 102 divorce on September 7, 2007. The trial court judge signed an order that same day. The order, among other things, terminated the community as of the date of filing.
*252 Child custody issues were subsequently ■resolved, and the. divorce was finalized in 2013, leaving only a dispute about spousal support and the division of community property undecided. Sarah filed a petition to, partition the community property in March 2013.
On July 31, 2014, the parties appeared before the court to finally resolve the outstanding issues. At that hearing, Albert’s attorney explained that it was the intent of the parties to resolve:
(1) a rule for back due spousal support and a related exception;
(2). a-rule for permanent spousal support, and
(3) the community property issue.
Albert agreed to pay Sarah $23,000 at the rate of $1,000 per month as a resolution of Sarah’s claim, for past due interim spousal support.
Albert’s lawyer further clarified:
This settlement eliminates those claims forever. In addition, it also—all rights, claims and/or causes of action for permanent periodic spousal support are forever waived and extinguished 12by this settlement .... And any future rule wóúld be' considered already dismissed with prejudice. And in addition to that, with regard to the assets of the community of acquets and gains, all assets held by either party shall remain in the full ownership of either party and any claims for reimbursement, any cross-claims of any nature are forever relinquished and disposed of.
The remaining issue was the division of Albert’s railroad retirement benefits. During the marriage, Albert was employed by Kansas City Southern Railroad (“KCS”), and while so employed, he accrued retirement benefits. These annuity benefits are administered by the federal U.S. Railroad Retirement Board (the “Board”), pursuant to 45 U.S.C. §§ 231, et seq., and that agency has regulations in place relating to the partition of such annuities in property settlements incidental to divorce. See 20 C.F.R. §§ 295 et seq. An important step in the partition process is the submission of a partition order to the Board.[1] Albert’s counsel explained that the lawyers were going to prepare a court order harmonizing the federal rules with Louisiana’s Sims v. Sims[2] formula for the partition of assets, with Sarah’s counsel explaining:
[T]he intent is to follow whatever the Railroad Retirement Act provides in conjunction with whatever Louisiana law provides, whether it is defined benefit plan and/or the Sims formula using years of service versus years of marriage, and we’ll prepare a court order or a decree separate from the judgment for the ... qualified domestic relations order,
laCounsel further told the court that they would submit material[3] from the Board explaining the process along with the order, and Albert’s counsel agreed to prepare the order. Albert testified that he agreed with the terms of the agreement as expressed in court and expressly agreed that “we’re settling the whole case... [y]our litigation is over with today.”
*253 On August 22, 2014, the court signed a judgment stating, in part:
[T]he community of acquets and gains heretofore existing between the aforementioned parties is deemed resolved by:
1. Each party retaining any and all properties in their possession as their .separate property; and
2. Railroad Retirement of Albert Spi-vey being partitioned in accordance with the Railroad Retirement Act and instructional document filed of record as J-l with the parties to prepare a QDRO [Qualified Domestic Relations Order] which is to follow what the Railroad Retirement Act provides in conjunction with whatever Louisiana Law provides whether it is defined benefit plan or Sims formula using years of service/ years of marriage.
However, the record does not reflect that any such QDRO was prepared contemporaneously with this judgment.
In October 2015, Sarah filed a rulé to show cause in the 26th JDC asking the court to sign a first amended judgment of partition (essentially a QDRO) so that judgment could be sent to the Board. Sarah alleged that Albert’s counsel had been sent a copy of the proposed judgment in May 2015 but had not responded.
Albert retained new counsel, and the trial court with a new judge presiding held a hearing in January 2016. Counsel for both sides told the judge they would submit a judgment/QDRO and asked the judge to review the Utranscript of the 2014 hearing and sign the version that he felt most closely followed the parties’ agreement set out at that hearing.
Each side prepared. and submitted a proposed QDRO. Albert Spivey’s proposed judgment was considerably simpler in form than Sarah Spivey’s.
Albert’s order said, in part:
SARAH SPIVEY is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of ALBERT SPIVEY’s benefits under the Railroad Retirement Act (45 U.S.C. §§ 231-231B), which may be divided as provided by Section 14 of that Act (45 U.S.C. § 231m). SARAH SPIVEY’s share shall be computed by multiplying the divisible portion of ALBERT SPI-VEY’s monthly benefit by a fraction, the numerator of which is the number of months ALBERT SPIVEY worked for the railroad employer during, the period of the marriage, September 21, 1994, through September 7, 2007, and the denominator of which shall be ALBERT SPIVEY’s total number of months employed by a railroad employer at retirement, and then dividing the product by two (2).
Sarah’s proposed order was longer and contained several more provisions. Two different provisions specifically related to the railroad retirement:
SARAH SPIVEY is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of ALBERT SPIVEY’S benefits under the Railroad Retirement Act (45 U.S.C. §§ 231-2231(W)), which may be divided as provided by Section 14 of that Act (45 U.S.C. § 231m). SARAH SPIVEY’S share shall be computed as an amount equal to fifty-percent (50%) of ALBERT SPIVEY’S gross monthly benefits.
⅝ ⅜ ⅜
SARAH SPIVEY is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of ALBERT SPIVEY’S benefits under the Railroad Retirement Act (45 U.S.C. §§ 231-231B), which may be divided as *254 provided by Section 14 of that Act (45 U.S.C. § 231m). SARAH SPIVEY’S share shall be computed by multiplying the divisible portion of ALBERT SPI-VEY’S monthly benefits by a fraction, the numerator of which is the number of months ALBERT SPIVEY worked for the railroad employer during the period of the marriage, September 21, 1994, through September 7, 2007, and the denominator of which shall be ALBERT SPIVEY’S total number of months employed by a railroad employer at retirement, and then dividing the product by two (2).
| ¡¡Sarah's order also contained some other provisions not related to the railroad retirement issue. Paraphrasing, these additional provisions were:
1. Both parties waived rental/reimbursement claims for community assets;
2. Both parties acknowledge that they have received property equal to that conveyed herein, in consideration of settling the dispute;
3. The parties waived any claim by their own separate estate against the community, including reimbursement for payment of community debts out of their separate property;
4. The parties agree to sign all documents necessary to effect the agreement;
5. The judgment is a complete settlement of all claims either party may have against each other;
6. The parties are precluded from asserting a lesion claim against the other with respect to the agreement.
On February 12, 2016, the judge signed Sarah’s longer judgment and refused to sign Albert’s judgment.
Albert filed a motion for new trial, urging that the judgment did not reflect the stipulations and agreements reflected by the transcript of the 2014 rule to show cause hearing. The court heard argument on the motion for new trial, but denied it, stating that it found no basis to grant a new trial. Albert now appeals.
DISCUSSION
On appeal, Albert raises three assignments of error; contending that the trial court should not have signed Sarah’s judgment because:
• It was not a QDRO as contemplated by the stipulation of the parties entered on July 31, 2014;
• The judgment contained contradictory provisions relating to the division of Albert’s railroad retirement; and
• • The judgment contained provisions that were not stipulated to by the parties at the July hearing.
IfjWe consider that the trial court’s determinations about the proper division of Albert’s retirement and the inclusion of the additional provisions were based on the trial court’s application of the law, rather than its findings of fact, so we review the trial court’s ruling de novo. Waggoner v. Am. First Ins., 42,863 (La. App. 2 Cir. 1/16/08), 975 So.2d 110.
Albert’s first and third complaints are that the judgment on appeal includes additional provisions outside of the partition of railroad retirement benefits. Specifically, he argues that the six “additional provisions” referred to above are not relevant to the railroad retirement question, should not be included in a QDRO, and are in fact an attempt by Sarah to amend the now final August 22, 2014, judgment that—in addition to its reference to the QDRO - resolved the spousal support issues.
We find none of the six additional provisions to be objectionable in light of the transcript of the July 31, 2014, hearing. At that hearing, the parties were endeavoring *255 to put an end to their dispute which began in 2007, and Albert personally approved of the matters referred to by counsel at the hearing. That approval encompassed counsel’s assertions that the settlement would put an end to all future property disputes between the parties. We consider the six additional provisions included in the most recent judgment to be relatively standard, boilerplate matters that, if unaddressed, might potentially lead to additional litigation in the future. Because the most recent judgment was intended to be the court’s “final say” in this now 10-year-old dispute, we do not find a reason to disturb the judgment to excise them.
17Albert’s second assignment of error concerns the use of the two different paragraphs explaining how his railroad retirement should be divided.
In Sims v. Sims, supra, the Louisiana Supreme Court explained:
[Ojur courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse’s interest in proceeds from a retirement annuity, or profit-sharing plan' or contract, if and when they become payable, with the spouse’s interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse’s contributions or employment during the existence of the community.
In the “Partition of Annuities By Court Decree” document introduced into evidence in July 2014, the Board helpfully included the following language:
A model paragraph for a decree which complies with the Board’s regulations and which awards to each spouse an equal share of divisible benefits proportionate to the period of the marriage is as follows:
(Spouse’s name) is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of (Employee’s name) benefits under the Railroad Retirement Act (45 U.S.C. §§ 231, et seq.) which may be divided as-provided by section 14 of that Act (45 U.S.C. § 231m). (Spouse’s name) share shall be computed by multiplying the divisible portion of (Employee’s name) monthly benefit by a fraction the numerator of which is the number of years (Employee’s name) worked for a railroad employer during the period of the marriage (month/year through month/year), and the denominator of which shall be (Employee’s name) total number of years employed by a railroad employer at retirement, and then dividing the product by two.
CONCLUSION
Although we appreciate that the Board will ultimately review the Louisiana decree to determine whether it complies with both federal and state law, we conclude that the inclusion in the judgment of two conflicting paragraphs as to how the annuity is to be divided has the potential to cause Isconfusion and further delay. Accordingly, we opt to amend the February 12, 2016, judgment to delete the following paragraph:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the SARAH SPIVEY is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of ALBERT SPIVEY’s benefits under the Railroad Retirement Act (45 U.S.C. §§ 231-2231(W)), which may be divided as provided by Section 14 of that Act (45 U.S.C. § 231m). SARAH SPIVEY’s share shall be computed as an amount equal to fifty-percent of ALBERT SPI-VEY’S gross monthly benefits.
*256 The remaining paragraph is more closely aligned with the language in the Federal guidelines and, since it complies with the Sims formula, is fully sufficient to effectuate an appropriate partition of the property-
In all other respects, the judgment appealed from is affirmed. Costs of this appeal are divided equally between appellant and appellee.
DECREE
AMENDED, AND, AS AMENDED, AFFIRMED.

. According to 20 C.F.R. § 295.4(a) Regularity. Thé General Counsel or his or her desig- nee shall review the court decree or property settlement to determine that it complies with both the law of the jurisdiction, and with Federal law and these regulations,

. Sims v. Sims, 358 So.2d 919 (La. 1978).

.Part of this material included a document from the Board entitled "Partition of Annuities by Court Decree,” which is available at www.rrb.gov/forms/PandS/gl77series/gl77d. asp#.